UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA REEDS,

      Plaintiff,                                   Case No.

v.                                                Hon. Laurie J. Michelson

WASHTENAW COMMUNITY COLLEGE,

      Defendant.

| Noah S. Hurwitz (P74063) | Heidi D. Hudson (P32495) |
|---|---|
| Grant M. Vlahopoulos (P85633) | ZAUSMER, P.C. |
| HURWITZ LAW PLLC | *Attorneys for Defendant* |
| Attorneys for Plaintiff | 32255 Northwestern Highway, Ste 225 |
| 1514 Creal Crescent | Farmington Hills, MI 48334 |
| Ann Arbor, MI 48103 | (248) 851-4111 |
| (844) 847-9489 | Hhudson@zausmer.com |
| Noah@hurwitzlaw.com | |
| Grant@hurwitzlaw.com | |

*This matter is a companion case to Michelle Benin v. Washtenaw Community College, Case No. 20-cv-12812, and should be assigned to the Honorable Laurie J. Michelson*

### COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Dana Reeds, by and through her attorneys HURWITZ LAW PLLC, and states the following:

### INTRODUCTION

1. This is an employee rights lawsuit against Defendant Washtenaw Community College ("Defendant") that is precipitated by a discriminatory animus

1

and/or implicit bias within Defendant's Office of Human Resource Management against African American employees. Plaintiff Dana Reeds ("Ms. Reeds") was terminated as a result of Defendant treating African American employees differently than similarly situated non-African-American employees.[1]

## JURISDICTION AND PARTIES

2. Plaintiff Dana Reeds is an individual residing in the City of Gladwin, County of Gladwin, State of Michigan.

3. Defendant Washtenaw Community College is a Michigan community college with its principal place of business in Ypsilanti, Michigan in the County of Washtenaw.

4. This action arises under the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and Michigan's Elliot-Larsen Civil Rights Act (the "ELCRA"), M.C.L.A. § 37.1101, *et seq.*

5. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C.A. § 1343(a)(4) (jurisdiction over civil rights

---

[1] Pursuant to a Stipulated Order Severing Claims filed on December 22, 2021, the parties have stipulated to sever the claims brought by each Plaintiff in accordance with Federal Rule of Civil Procedure 21 for Case No. 2:20-cv-12812. This Second Amended Complaint is filed within 28 days from the date of entry of Court Order on behalf of Plaintiff Dana Reeds.

claims). This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over Plaintiff's state law claims.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the Defendant's principal place of business is located and where the events giving rise to Plaintiff's claims took place.

7. The facts and unlawful employment practices within the meaning of Title VII, the FMLA and the ELCRA, and giving rise to this Complaint occurred within the Eastern District of Michigan.

8. Defendant is an employer and Plaintiff was its employee at all relevant times within the meaning of Title VII, the FMLA and the ELCRA.

9. Plaintiff filed a timely charge of discrimination with the EEOC alleging discrimination on the bases of her race and retaliation.

10. Plaintiff's charges were filed within 300 days of the unlawful employment practices alleged in this claim.

11. Plaintiff received notice of her right to sue in April 2021.

## FACTUAL ALLEGATIONS

12. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

13. Ms. Reeds is African American.

14. Ms. Reeds was hired by Defendant in May 1989 as a part-time Clerical Services Secretary for the Human Resource Department. She would excel and standout as a high performer within Defendant's Office of Human Resource Management, earning promotions and rising through the ranks during her 30-year career with Defendant.

15. Ms. Reeds was promoted in 1989 to part-time Clerk Level I.

16. Ms. Reeds was promoted in 1993 to Human Resource Management Assistant, a full-time position within Defendant's Office of Human Resource Management.

17. She was promoted again in 1997 to Human Resource Management Associate.

18. She was promoted again in 2000 to Human Resource Specialist.

19. She was promoted again in March 2003 to Compensation/Benefits Specialist.

20. In 2007, Ms. Reeds' title was changed to the Defendant's Benefits & Leave Coordinator, whereupon she was supervised by Christine Mihaly.

21. Ms. Reeds took a medical leave from February 2017 through March 2017.

22. Ms. Reeds' title was changed to Retirement & Leave Coordinator effective April 2017. As Defendant's Benefits and Leave Coordinator, Ms. Reeds

managed the paid leave tracking system and leave time balances for Defendant's employees, administered employee benefits programs (health, dental, life insurance, pension and other retirement plans), answered employee benefit questions, resolved employee enrollment/eligibility issues, communicated with third party administrators, administered employee leave (including short-term disability, long-term disability, FMLA, worker's compensation, etc.), conducted confidential employee counseling and coaching, collected and recorded confidential employee medical documentation, managed leave requests, maintained data integrity of HRIS systems, conducted benefit orientations, managed annual employment contracts, managed fringe benefit payroll deductions, processed enrollment/status changes, oversaw third party administrator relationships, managed pay deductions, processed unemployment claims, handled ADA accommodations, fielded benefit questions, administered supplemental retirement accounts, maintained HRIS files, and prepared benefit documentation.

23. Ms. Reeds has thorough knowledge of the policies and procedures regarding benefits and leaves and applied her knowledge consistently with all employees.

24. After coordinating leave of absence requests from Defendant's employees for nearly a decade, Ms. Reeds began suffering from major depressive

disorder and anxiety, whereupon she found it necessary to request intermittent FMLA leave from Defendant beginning on or around August 3, 2009.

25. Ms. Reeds' condition worsened on or around October 3, 2014, which precipitated further requests for intermittent FMLA leave. Ms. Reeds would continue to undergo mental health therapy in the years to come.

26. Ms. Reeds required a continuous FMLA leave on February 14, 2017 for her mental health condition.

27. On February 15, 2019, Ms. Reeds was placed on a two-week FMLA leave to have surgery on her wrist. Prior to and while on leave in February 2019, Ms. Reeds was still being treated by a medical professional for acute adjustment disorder, anxiety and depression.

28. While Ms. Reeds was out on FMLA leave, Defendant's former employee, Personna Hover ("Ms. Hover"), submitted a request for FMLA leave.

29. Ms. Hover is African American.

30. In Ms. Reeds' absence, Ms. Hover's leave request was managed by Ms. Reeds' Caucasian colleagues Andrea Hemphill and Liz Marinkovski.

31. Ms. Reeds remained on FMLA and Short-Term Disability leave until July 5, 2019.

32. When Ms. Reeds returned from FMLA leave, she communicated with Ms. Hover regarding her FMLA leave.

33. Ms. Reeds observed a pattern of the Defendant treating medical leave requests by African American employees differently than leave requests from non-African American employees.

34. Ms. Reeds heard Ms. Mihaly question whether physician leave requests submitted by African American employees were warranted and that physicians "take [an employee] off work if the employee asks them to."

35. For example, Ms. Reeds observed that Defendant granted Caucasian employees short-term disability paid leave during the initial ten days of a requested leave, but that African-American employees that applied for short-term disability had to instead use accumulated "paid time off" during the initial ten days.

36. Further, Ms. Reeds observed that Caucasian employees were invariably granted paid leave time without qualifying for short-term disability or FMLA leave.

37. On numerous occasions, Ms. Reeds was asked by her Caucasian colleagues to be present in a token fashion during meetings where benefit issues were discussed with African American employees, but her presence was not requested during all meetings with Caucasian employees.

38. Ms. Reeds observed Defendant terminate Plaintiff Hover's employment despite informing Ms. Mihaly that Ms. Hover had leave time available in her personal, sick and vacation banks that would have covered her absences and pursuant to the FMLA.

39. Ms. Reeds observed Defendant terminate Ms. Hover's employment despite the fact that Ms. Hover submitted medical documentation supporting her FMLA leave.

40. As an African American employee that was forced to utilize FMLA leave in the past due to mental health treatments, Ms. Reeds feared that she would be retaliated against for using FMLA leave.

41. Ms. Reeds' supervisor (Ms. Mihaly) punished Ms. Reeds after she took FMLA leave in April 2017 by changing her position to Retirement & Leave Coordinator. Ms. Reeds had wanted to maintain the "Benefits" portion of her job title, but "benefits" responsibilities were instead transferred to Caucasian employee Liz Marinkovski, Defendant's Special Projects Coordinator, and Ms. Reeds was threatened with demotion to a "front desk" position if she did not agree to the adverse job action.

42. In the years preceding Ms. Reeds' termination, Ms. Mihaly required Ms. Reeds to train Ms. Marinkovski to perform her job duties and ultimately replace her.

43. In January 2020, Defendant named Christine Mihaly the Vice President of Human Resources.

44. Ms. Reeds had two Caucasian colleagues (Andrea Hemphill and Liz Marinkovski) that were less experienced than her and performed lesser job functions in the Office of Human Resource Management.

45. When the COVID-19 pandemic began in March 2020, Ms. Mihaly excluded Ms. Reeds from the "essential" staff list, but included her two less experienced Caucasian colleagues, Ms. Hemphill and Ms. Marinkovski.

46. On April 29, 2020, Ms. Reeds was terminated as part of an alleged "reduction in force" by Defendant.

47. Ms. Reeds' job duties were primarily assumed by less experienced individuals that were Caucasian.

### COUNT I - DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000e

48. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

49. At all relevant times, Defendant was an employer with greater than 15 employees and Ms. Reeds was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

50. Ms. Reeds is a member of a protected class based on her race (African American).

51. Defendant's actions were motivated by unlawful discrimination against Ms. Reeds because of her race.

52. Defendant subjected Ms. Reeds to adverse employment actions, including termination, based on their race.

53. Ms. Reeds would not have been terminated but for the fact that she is African American.

54. Defendant's actions were taken in reckless disregard of Ms. Reeds' federally protected civil rights, entitling Ms. Reeds to punitive damages.

55. As a direct and proximate result of Defendant's actions, Ms. Reeds has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacities and ability to work and she will so suffer in the future.

**COUNT II - DISCRIMINATION IN VIOLATION OF ELCRA**

56. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

57. Defendant employed Ms. Reeds within the meaning of the Elliott-Larsen Civil Rights Act, MCL 37.2010 et seq. ("ELCRA").

58. Defendant is an employer within the meaning of the ELCRA.

59. The ELCRA prohibits, among other things, discrimination based upon race.

60. Ms. Reeds is an African American female.

61. Ms. Reeds was qualified for her respective position.

62. Ms. Reeds was held to different standards than her white counterparts.

63. Ms. Reeds suffered adverse actions, including failure to promote and termination, while similar-performing white employees were promoted and retained.

64. As a direct and proximate result of Defendant's discriminatory conduct, Ms. Reeds was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to: lost wages; damages to professional reputation; emotional distress; outrage, humiliation; indignity and disappointment.

## COUNT III – FMLA RETALIATION

65. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

66. Defendant terminated Ms. Reeds' employment due to her prior exercise of her rights under the FMLA, including requesting leave for her FMLA-qualifying serious medical condition.

67. Defendant's actions in violation of the FMLA were willful.

68. As a direct and proximate result of Defendant's retaliation against Ms. Reeds for exercising her FMLA rights, Ms. Reeds suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

69. As a further direct and proximate result of Defendant's violation of the FMLA, Ms. Reeds has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

A. Judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, injunctive relief, declaratory judgment, liquidated damages, punitive damages, and attorney fees under Title VII, ELCRA, FMLA;

B. Award Plaintiff appropriate equitable relief, compensatory damages, and exemplary damages;

C. Award Plaintiff appropriate civil penalties;

D. Award Plaintiff all costs, attorneys' fees, and interest incurred prosecuting this claim; and

E. All further relief as the Court deems just and equitable.

                                      Respectfully submitted
                                      HURWITZ LAW PLLC

                                        */s/ Noah S. Hurwitz*
                                      Noah S. Hurwitz (P74063)
                                      Attorney for Plaintiff

Dated:  January 15, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA REEDS,

    Plaintiff,                    Case No.

v.                                     Hon. Laurie J. Michelson

WASHTENAW COMMUNITY COLLEGE,

    Defendant.

| Noah S. Hurwitz (P74063) | Heidi D. Hudson (P32495) |
|---|---|
| Grant M. Vlahopoulos (P85633) | ZAUSMER, P.C. |
| HURWITZ LAW PLLC | *Attorneys for Defendant* |
| Attorneys for Plaintiff | 32255 Northwestern Highway, Ste 225 |
| 1514 Creal Crescent | Farmington Hills, MI 48334 |
| Ann Arbor, MI 48103 | (248) 851-4111 |
| (844) 847-9489 | Hhudson@zausmer.com |
| Noah@hurwitzlaw.com | |
| Grant@hurwitzlaw.com | |

## **JURY DEMAND**

NOW COMES Plaintiff Dana Reeds by and through her attorneys HURWITZ LAW PLLC, and hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                            Respectfully submitted
                                            HURWITZ LAW PLLC

                                            */s/ Noah S. Hurwitz*
                                            Noah S. Hurwitz (P74063)
Dated: January 15, 2022              Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 15, 2022 the foregoing Complaint and Jury Demand was served upon Defendant's counsel-of-record via ECF.

/s/ Rebecca Svinicki
Rebecca Svinicki, Litigation Paralegal
